UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20CR00379 SEP-1 |
| | ) | |
| MARCUS ANTONIO BEASLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1.  PARTIES:**

The parties are the defendant, Marcus Antonio Beasley, represented by defense counsel Terence Walter Niehoff, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and is not intended to, bind any Governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

**2.  GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One as charged in the Indictment, the United States agrees to move for dismissal of all remaining counts as to the defendant at the time of sentencing (specifically, counts 2, 7, 8, 10-13, 17-22 and 24). Moreover, the United States agrees that no

1

further federal prosecution will be brought in this District relative to the underlying facts supporting the charges herein, of which the United States is aware at this time.

The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).  The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual basis for the request.

**3.  ELEMENTS:**

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, within the Eastern District of Missouri and elsewhere, and admits there is a factual basis for the plea, and further, fully understands that the crime of conspiracy to distribute and possess with the intent to distribute cocaine base ("crack" cocaine) has four elements, which are:

*One*, beginning at a time unknown, but including October 2016 through July 2020, and continuing up to the date of the Indictment, two or more persons reached an agreement or came to an understanding to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine), a Schedule II controlled substance;

*Two*, the defendant voluntarily and intentionally joined in the agreement or understanding

2

either at the time it was first reached or at some later time while it was still in effect;

*Three*, at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and

*Four*, the agreement or understanding involved 28 grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack" cocaine).

## 4.  FACTS:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In 2016, St. Louis County Police Department (STLCOPD) Officers received information that the defendant, Marcus Antonio Beasley, was selling cocaine base, also known as "crack" cocaine, in the St. Louis, Missouri area. On October 27, 2016, STLCOPD officers conducted a controlled purchase from the defendant for one gram of "crack" cocaine in exchange for $100. Officers did not continue further investigation on the defendant until new information regarding his drug distribution activities was received in August 2018.

In August 2018, both STLCOPD officers and agents with the Federal Bureau of Investigation (FBI) received information that defendant was selling "crack" cocaine from a residence located at 315 Lithia Avenue in Webster Groves, Missouri and utilizing 314-320-1814 to set up drug transactions. The FBI began to assist with the STLCOPD investigation and utilized confidential informants and undercover officers to purchase "crack" cocaine from the defendant and co-conspirators in both St. Louis County or the City of St. Louis, which are located in the Eastern District of Missouri. The controlled purchases are summarized as follows:

3

On October 10, 2018, a STLCOPD confidential informant (CI) met the defendant at the intersection of Manchester and Rock Hill and provided the defendant with $60 in exchange for a half of a gram of "crack" cocaine.

On October 24, 2018, the CI and an FBI undercover officer (UC) met the defendant at the 315 Lithia residence and provided the defendant with $100 in exchange for one gram of "crack" cocaine.

On October 30, 2018, the UC called the defendant's cell phone (314-320-1814) and spoke with the defendant to arrange a drug transaction. The defendant directed the UC to the 315 Lithia residence. When the UC arrived, co-defendants Steven Wright and Anthony James were waiting in Wright's car outside the residence. James approached the UC's vehicle and provided the UC with .57 grams of "crack" cocaine in exchange for $100.

On November 7, 2018, the UC met the defendant in the area of Lithia Avenue and gave him $150 in exchange for .83 grams of "crack" cocaine.

On November 19, 2018, the UC met the defendant at Love's Travel Stop, located at 6124 North Broadway, and gave him $150 in exchange for .75 grams of "crack" cocaine.

On November 28, 2018, the UC met the defendant at Hardee's, located at 2110 Hampton Avenue, and gave him $300 in exchange for 1.47 grams of "crack" cocaine.

On December 12, 2018, the UC called the defendant's cell phone and spoke with him about purchasing a quarter ounce of "crack" cocaine. The defendant agreed to the transaction and ultimately directed the UC to Package Liqueur located at 7842 N. Broadway. Beasley arrived in the passenger seat of a tan Nissan Altima (the Altima) and an unidentified female was driving.

The unidentified female approached the UC vehicle, and the UC provided her with $700 in exchange for 5.35 grams of "crack" cocaine.

On January 3, 2019, the UC called the defendant's cell phone and arranged another quarter ounce of crack cocaine transaction. The defendant directed the UC to the area of Bellefontaine Road and Chambers Road. The defendant arrived in the Altima with the same unidentified female who conducted the drug transaction on December 12, 2018. The unidentified female approached the UC vehicle, and the UC provided her with $700 in exchange for 4.74 grams of "crack" cocaine.

On January 30, 2019, the UC contacted the defendant and arranged a purchase for a half-ounce (14 grams) of "crack" cocaine. The UC met the defendant at a BP gas station, located at 1187 S. Kingshighway. When the UC arrived, the defendant entered the UC's vehicle and provided him with $1,000 in exchange for "crack" cocaine. The "crack" cocaine purchased from the defendant was supposed to be 14 grams, but was only 9.54 grams. On January 31, 2019, the UC contacted the defendant and advised him that the drugs purchased the day prior weighed less than they had agreed upon. The defendant assured the UC that the "dude" he bought the "crack" cocaine from said it was 14 grams.

On February 20, 2019, the UC contacted the defendant and arranged a purchase for a half-ounce of "crack" cocaine. The defendant directed the UC to Empire Beauty, located at 10000 West Florissant Avenue. The defendant, who was driving the Altima, arrived at Empire Beauty with co-defendant Kevin Ingram Jr., who exited the Altima and entered the UC's vehicle. The UC provided Kevin Ingram Jr. with $1,000 in exchange for 10.5 grams of "crack" cocaine.

On March 14, 2019, the UC contacted the defendant and arranged a purchase for a half-ounce of crack cocaine. The defendant directed the UC to the Old Navy, located at 8881 Ladue Road.  When the UC arrived, the defendant and an unidentified female (from the December 12, 2018 and January 3, 2019 controlled purchases) were waiting in the Altima. The unidentified female entered the UC's vehicle, and the UC gave her $1,000 in exchange for 10.82 grams of "crack" cocaine.

On April 10, 2019, the UC contacted the defendant and arranged a purchase for one ounce of "crack" cocaine. The defendant directed the UC to the Miami Grill, located at 7701 Page Avenue in St. Louis County. The UC called the defendant upon arrival, who indicated it would be fifteen minutes while they "rocked up the cocaine." Shortly after, Kevin Ingram Jr. arrived and provided the UC with 24.08 grams of "crack" cocaine in exchange for $1,000.

On July 17, 2019, the CI attempted to contact the defendant to buy one gram of "crack" cocaine. The defendant did not answer the call, so the CI contacted co-defendant Jason Ingram. Jason Ingram confirmed he could sell "crack" cocaine to the CI , and they met at 315 Lithia. Jason Ingram gave .73 grams of "crack" cocaine to the CI in exchange for $100. After the transaction, the defendant called the CI to confirm Jason Ingram sold the drugs to the CI.

On August 8, 2019, a STLCOPD Undercover Officer (STLCOPD UC) met the defendant at a Save-A-Lot parking lot near Riverview Circle and purchased 1.4 grams of "crack" cocaine in exchange for $100.

On August 27, 2019, the UC placed a call to the defendant to arrange a purchase for one ounce of "crack" cocaine, and he directed the UC to the Lithia residence. A short time later, the UC arrived at the Lithia residence and purchased 23.7 grams of "crack" cocaine from the defendant

in exchange for $1,850. At this time, the UC indicated that he/she wanted a second ounce, and the defendant said he could obtain the supply in an hour. The UC requested a better price, but the defendant said he could not offer a deal because of his partner.  About an hour later, the UC called the defendant, who directed the UC to White Castle located at Delmar Boulevard and Kingshighway in the City of St. Louis. When the UC arrived, the defendant entered the UC's vehicle and gave the UC 24.2 grams of "crack" cocaine in exchange for $1,850.

On September 25, 2019, the STLCOPD UC met the defendant at the Ivory Crockett Park and purchased 1.4 grams of "crack" cocaine in exchange for $100.

On October 23, 2019, the UC called the defendant to arrange a purchase for one ounce of "crack" cocaine. The defendant directed the UC to a Jack in the Box in University City. When the defendant arrived, he entered the UC's vehicle and gave the UC 25.1 grams of "crack" cocaine in exchange for  $1,850.

On March 5, 2020, an FBI Confidential Informant (FBI CI) called the defendant and arranged a $900 purchase of "crack" cocaine. The defendant asked whether the FBI CI wanted "hard," referring to "crack" cocaine, or "soft," referring to powder cocaine, then directed the FBI CI to a Schnucks parking lot, located at 6920 Olive. When the defendant arrived, he entered the the FBI CI's vehicle and gave the FBI CI 14.1 grams of "crack" cocaine in exchange for $900.

On August 3, 2020, a second FBI UC met the defendant at a Burger King near the Galleria Mall and purchased 5 grams of "crack" cocaine in exchange for $1,000.

On August 20, 2020, FBI CI met the defendant near the area of Riverview Circle and purchased 8.3 grams of "crack" cocaine in exchange for $1,500.

On August 25, 2020, agents planned to arrest the defendant due to an outstanding warrant from the instant offense and execute an authorized search warrant for both his residence, located at 117 Glen Garry, and Wright's residence, located at 4725 Fletcher Street. In an attempt to arrest the defendant in a safe location since many children were present at his house, FBI CI called the defendant to arrange a purchase of "crack" cocaine. The defendant left his residence and proceeded to Wright's residence to get "crack" cocaine. Once the defendant arrived at Wright's residence, they were both arrested. During a lawful interview, the defendant admitted he had two main sources to obtain "crack" cocaine and would sometimes send other associates to meet with buyers and complete deals for him.

Based upon the evidence, including relevant conduct, the parties agree that the readily provable amount of cocaine base ("crack" cocaine), attributable to the defendant, is at least 112 grams but less than 196 grams. The defendant possessed this "crack" cocaine, knowing it is a controlled substance, and conspired with Kevin Ingram Jr., Steven Wright, Jason Ingram, Anthony James and other persons to distribute or possess with the intent to distribute some or all of it. Expert testimony in the event of trial would establish that this amount of "crack" cocaine is inconsistent with amounts possessed purely for personal use and are consistent with amounts possessed for the purpose of distribution. The evidence seized and analyzed would demonstrate that cocaine base ("crack" cocaine) is a Schedule II controlled substance.

## 5.  STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the felony crime to which the defendant is pleading guilty is imprisonment of not more than forty (40) years, a fine of not more than $5,000,000, or both such imprisonment and fine.  The Court

shall also impose a period of supervised release of at least four (4) years. **The defendant also fully understands that the crime in Count One to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least five (5) years.**

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is **26**, as found in Section 2D1.1(c)(7). The parties agree that the quantity of cocaine base ("crack" cocaine) for which the defendant is accountable, including relevant conduct, is at least 112 grams but less than 196 grams, resulting in the agreed Base Offense Level.

**(2) Specific Offense Characteristics:** The parties recommend that no specific offense characteristics apply.

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b) because the defendant has clearly demonstrated acceptance of responsibility and timely notified the United States of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea, the United States receives new evidence of statements or conduct by the defendant, which it believes are

9

inconsistent with the defendant's eligibility for this deduction, the United States may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

> **(2)  Other Adjustments:**  The parties reach no agreement as to the applicability of other adjustments under Chapter 3. Specifically, the parties do not agree on the application of an Aggravating Role pursuant to Section 3B1.1.  Therefore, the applicability of any other adjustments shall be left to the determination of the trial court. Both parties are free to advocate for or against the application of any such provision.

**c.  Estimated Total Offense Level:**  The parties reach no agreement as to the total offense level. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  Defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**d.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any

Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**  In light of the United States' agreement to dismiss Counts 2, 7, 8, 10-13, 17-22 and 24 of the Indictment as to the defendant at the time of sentencing, in the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines provisions agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category.  Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28,

United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

**a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

**b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States

12

Code, Section 3583(e)(3), without credit for the time served after release.  The defendant

understands that parole has been abolished.

   **d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code,

Section 3013, the Court is required to impose a mandatory special assessment of $100 per count

for a total of $100, which the defendant agrees to pay at the time of sentencing.  Money paid by

the defendant toward any restitution or fine imposed by the Court shall be first used to pay any

unpaid mandatory special assessment.

   **e.  Possibility of Detention:**  The defendant may be subject to immediate

detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   **f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court

may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that

any fine imposed by the Court will be due and payable immediately.

   **g.  Forfeiture:**  The defendant agrees the stipulated facts above are sufficient to

support forfeiture of certain assets pursuant to the applicable forfeiture authorities, including but

not limited to: a Smith & Wesson, Model SD40 semi-automatic pistol, a Hi-Point 45 ACP pistol,

a Smith & Wesson 38 Special Revolver, and a Stoeger Cougar Model 8000 9mm pistol, and

miscellaneous ammunition. The defendant agrees the Court may enter a consent preliminary

order of forfeiture any time before sentencing, and such Order will become final as to the

defendant when it is issued and will be part of the sentence.  The defendant agrees not to object

to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture.

The defendant will execute any documents and take all steps needed to transfer title or ownership

of said assets to the United States and/or to rebut the claims of nominees and/or alleged third

party owners.  The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the

waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas that the defendant has requested relative to the United States' case and any defenses.

The defendant understands the guilty plea could impact the defendant's immigration status or result in deportation if the defendant is not a United States Citizen.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the guilty plea.

The defendant also understands this guilty plea impacts certain rights, such as the right to possess a firearm and/or ammunition. The defendant understands he is pleading guilty to a crime punishable by imprisonment for a term exceeding one year, and pursuant to Title 18, United States Code, Section 922(g), it is unlawful for any person convicted of such a crime to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition, which has been shipped or transported in interstate or foreign commerce.

## 10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case.  The defendant has fully discussed the terms and conditions of the offer with counsel, and the defendant understands and agrees to the same. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

16

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement, which deal with charges the United States agrees to dismiss or not to bring.

07/16/2021
Date

SARA E. KOPPENAAL
Assistant United States Attorney

7/16/21
Date

MARCUS ANTONIO BEASLEY
Defendant

7/16/21
Date

TERENCE WALTER NIEHOFF
Attorney for Defendant

17